909 So.2d 505 (2005)
Julio ROSADO and Nannette Rosado, Appellants,
v.
John VOSILLA, Emilio Cirelli, et al., Appellees.
No. 5D04-2617.
District Court of Appeal of Florida, Fifth District.
August 26, 2005.
*506 Sherri K. Dewitt, of Dewitt Law Firm, P.A., Orlando, for Appellant.
Stephen P. Sapienza, Bunnell, for Appellee.
EN BANC[1]
PLEUS, C.J.
This is an appeal from a judgment quieting title to real property. John Vosilla, Emilio Cirelli, Kelly Scofield and Steve Semmelman (collectively referred to as "the Vosilla partners") filed a complaint to quiet title to property they obtained by quit claim deed from Edward Terry. Terry bought the property at a tax deed sale after Julio and Nannette Rosado ("the Rosados") failed to pay their property taxes. The Rosados defended, arguing that they failed to receive notice of the tax sale. The trial court entered a final judgment quieting title in the Vosilla partners.
The Rosados appeal, arguing that because they had previously notified the tax collector and the clerk of their new address, the clerk's notice of tax deed sale to their old address was not "reasonably calculated under all the circumstances" to apprise them of the tax deed sale and therefore violated their federal constitutional due process rights. We agree and reverse.

Facts
The trial court's fact findings are supported by competent, substantial evidence and succinctly describe the material facts necessary to determine this appeal. It found as follows:
1. The Rosados were the fee simple owners of a residence located at 551 Quail Avenue in Altamonte Springs, Seminole County, Florida.
2. On May 27, 1998, the Seminole County tax collector issue a tax certificate for the property for delinquent 1997 property taxes.
3. On September 25, 1998, the Rosados notified the tax collector by letter that they had moved to 1614 Imperial Palm Drive, Apopka, Florida. The letter requested that any correspondence to them be mailed to a Zellwood post office box designated in the letter. The Rosados also advised the tax collector that a legally incapacitated relative would be residing at the Quail Avenue residence and would have a female caretaker there who did not speak English.
4. On February 21, 2000, the Rosados notified the clerk of court, property tax department, that their mailing address was the Apopka, Imperial Drive residence and that their Zellwood post office box could be used as a secondary address. The letter was sent by certified mail and receipt was acknowledged by the clerk.
5. Despite the Rosados' notices of change of address, the tax collector did not update the Rosados' change of address in the assessment roll, and the clerk of court did not update the address in the clerk's records.
6. On April 3, 2000, the tax certificate holder filed an application for a tax *507 deed to the Rosados' property. Pursuant to Sections 197.522(1)(a) and 197.502(4)(a) Fla. Stat. (2000), the clerk was required to mail notice of the application for the tax deed to the address of the legal title holder listed on the latest assessment roll. Because the tax collector did not update the Rosados' address in the assessment roll, the notice of the application for a tax deed was mailed certified mail, return receipt requested, to the Quail Avenue address. The return receipt was signed by a Regina Carmona. The Rosados did not receive notice of the application for tax deed nor of the date of the proposed sale.
7. On December 18, 2000, the property was sold at a tax sale to Edward J. Terry. On December 19, 2000, Mr. Terry conveyed the property by quit claim deed to the Plaintiffs.
Despite these findings, the trial court felt bound to follow Alwani v. Slocum, 540 So.2d 908 (Fla. 2d DCA 1989) and Eurofund Forty-Six, Ltd. v. Terry, 755 So.2d 835 (Fla. 5th DCA 2000), which both held that notice of a tax deed sale that complied with section 197.522(1) was sufficient, despite a property owner's prior efforts to send authorities notice of a change of address.

The Statutory Notice Scheme
The procedure for giving notice of a tax deed sale is prescribed in Chapter 197 of the Florida Statutes. Section 197.522 states, in pertinent part:
(1)(a) The clerk of the circuit court shall notify, by certified mail with return receipt requested or by registered mail if the notice is to be sent outside the continental United States, the persons listed in the tax collector's statement pursuant to s. 197.502(4) that an application for a tax deed has been made. Such notice shall be mailed at least 20 days prior to the date of sale. If no address is listed in the tax collector's statement, then no notice shall be required.
(Emphasis added). Section 197.502(4), Florida Statutes (2000), states in pertinent part:
The tax collector shall deliver to the clerk of the circuit court a statement that payment has been made for all outstanding certificates or, if the certificate is held by the county, that all appropriate fees have been deposited, and stating that the following persons are to be notified prior to the sale of the property:
(a) Any legal titleholder of record if the address of the owner appears on the record of conveyance of the lands to the owner. However, if the legal titleholder of record is the same as the person to whom the property was assessed on the tax roll for the year in which the property was last assessed, then the notice may only be mailed to the address of the legal titleholder as it appears on the latest assessment roll.
(Emphasis added).
When read together, sections 197.522(1)(a) and 197.502(4)(a) require the clerk to mail the legal titleholder notice to his or her address "as it appears on the latest assessment roll" as provided to the clerk in the tax collector's statement. The trial court correctly found that the clerk complied with this requirement.

Due Process Requirements: Mullane and Mennonite

In addition to the statutory notice requirements, the Due Process Clause of the Fourteenth Amendment prohibits states from taking property without due process of law. Due process requires that parties having an interest in property be given adequate notice and a meaningful *508 opportunity to be heard. Consequently, the Florida Legislature's authority to determine the extent and character of notice to be accorded a property owner before his or her property is sold for nonpayment of taxes is subject to the federal due process requirement that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Dawson v. Saada, 608 So.2d 806, 808 (Fla.1992), quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Whether a particular method of notice is reasonable depends on the particular circumstances of the case. Mullane, 339 U.S. at 314, 70 S.Ct. 652; Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 484, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). Dawson also quoted Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), for the proposition "that knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending." Dawson, 608 So.2d at 810.

Prior Florida Cases Interpreting the Notice Requirements and the Effects of a Property Owner's Change of Address
In addition to Dawson, at least five other Florida cases have discussed the notice requirements for tax deed sales and the effect of a property owner's prior efforts, or lack of efforts, to notify authorities of a change of address. We will briefly discuss these cases chronologically.
In Alwani v. Slocum, 540 So.2d 908 (Fla. 2d DCA 1989), the property owners made the same arguments as the Rosados. They claimed that they previously notified the tax collector and the clerk of their new address but the clerk failed to send notice to that address. The Second District Court of Appeal rejected this argument, finding that the clerk had complied with the statutory notice requirements of sending notice to the address on the latest tax roll. To require the clerk to ascertain the property owner's true address, the court reasoned, would place an "intolerable burden" on the clerk. Decided prior to Dawson, the Alwani decision also rested on the fact that the property owners knew they had not paid their property tax and the statutes did not provide a defense for insufficient notice of the tax deed sale. The court also rejected the property owners' due process arguments, stating:
The appellants cite various cases for the proposition that the notices should have been reasonably calculated to apprise them of the pending deprivation of their property. See Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). However, neither of those cases concerned a lack of notice of the kind involved here to a taxpayer who knows that taxes are unpaid.
Id. at 909-10.
In Evans v. Ireland, 707 So.2d 1135 (Fla. 2d DCA 1998), the court reversed a final judgment invalidating a tax deed based upon a denial of due process. Although the court found that the clerk complied with the statutory notice requirements, it twice noted in its recitation of the facts that the property owners had moved without informing the property appraiser of their address change. For a while, the new occupants forwarded tax bills to the property owners, but the owners "took no action to change the mistake in the Property Appraiser's address records." Id. at 1136.
*509 In Eurofund Forty-Six, Ltd. v. Terry, 755 So.2d 835 (Fla. 5th DCA 2000), the property owner appealed a final judgment declaring valid a tax deed on the ground that it did not get notice of the tax deed sale. In a one paragraph opinion, this Court affirmed, stating:
Our review of the record reveals that the clerk of the circuit court sent notices to the addresses listed on the tax collector's statement, as required by section 197.522(1)(a), Florida Statutes (1997), and the tax collector's statement contained the names and addresses of the legal title holders as listed on the last assessment roll. Sec. 197.502(4)(a). The fact that sometime in 1997 a change of address form had been filed with the property appraiser did not require the collector or the clerk to deviate from the statutory mandate. See, Dawson v. Saada, 608 So.2d 806 (Fla.1992); Alwani v. Slocum, 540 So.2d 908 (Fla. 2d DCA 1989), rev. denied, 548 So.2d 662 (Fla.1989).
Id. at 835 (footnote omitted; emphasis added).
In Kidder v. Cirelli, 821 So.2d 1106 (Fla. 5th DCA 2002), the holders of a tax deed sued to quiet title to a parcel of vacant land. The property owner contested the validity of the tax deed on the ground that he did not receive notice of the tax deed sale. Because the clerk's certified mailing was addressed to the vacant lot, it was returned marked "No Such Number." The sheriff was also unable to serve the titleholder. The trial court entered summary judgment in favor of the plaintiffs, citing Eurofund and Alwani. Id.
The property owner appealed, arguing that section 197.502(4) was unconstitutional because, under the circumstances, due process required that the clerk make a good faith effort to notify the property owner. He claimed his address could have been located on the tax rolls because he owned a separate homestead parcel. Id. at 1107. This Court affirmed. In her opinion, Judge Griffin acknowledged Dawson's adherence to Mennonite that a property owner's knowledge of unpaid taxes does not obviate the clerk's duty to provide notice of a tax deed sale. Nevertheless, she wrote:
That does not mean, however, that the owner does not bear any responsibility for his correct address being on the tax roll so that he may receive notices. This is not a game of hide and seek. The appellant knew he owed taxes and had not paid taxes. Presumably he was also not receiving tax bills. He certainly knew there was no mail delivery to this vacant lot. No claim is made that appellant ever took any steps to provide a correct address to taxing authorities or discover why he was not receiving tax bills. A person in the position of appellant has no right to complain that the clerk did not look hard enough for him.
Id. at 1107 (emphasis added).
In his special concurrence, Judge Cobb noted that "it appears that our prior opinion in [Eurofund] is in direct conflict with [Mullane]" but agreed to affirm based on Dawson because "[i]n the instant case, unlike Mullane, the failure of the tax rolls to reflect Kidder's correct mailing address is his fault and not that of the county. This is because it was Kidder who furnished the incorrect address to the taxing agencies...." Id. at 1108.
In his dissent, Judge Harris agreed with Judge Cobb that this Court's previous opinion in Eurofund violated Mullane. Id. at 1109. He disagreed, however, with the finding that the notice provided in Kidder was reasonably calculated to afford the property owner actual notice. Judge Harris wrote that "[i]f the clerk becomes *510 aware, as by the return of service ... and if the address is reasonably ascertainable, then I believe the constitution requires that the clerk proceed no further with the sale until the owner has been notified." Id. at 1111.
Just prior to the trial court's decision in the instant case, the supreme court decided Delta Property Management, Inc. v. Profile Investments, Inc., 875 So.2d 443 (Fla.2004). In that case, Delta failed to pay its 1997 property taxes. After Profile applied for a tax deed, the tax collector prepared a statement of persons entitled to notice and forwarded it to the clerk of court on May 30, 2000. Three months later, the clerk sent notice to Delta at the address listed on the tax collector's statement. The court then noted:
Because Delta was no longer located at the address specified in the statement, [FN4] the notice was returned to the clerk as undeliverable.
FN4. Delta allegedly notified the tax collector's office of its change of address on December 21, 1999.
Id. at 444. Profile purchased the property at the tax deed sale and later sued to quiet title. The trial court granted summary judgment for Profile and the First District Court of Appeal affirmed. The supreme court quashed the district court opinion, framing the issue and the holding as follows:
The issue in this case is whether, under chapter 197 of the Florida Statutes, the clerk of the circuit court must verify the legal titleholder's address prior to mailing the notice of the tax deed sale to that titleholder if the tax assessment roll has been or should have been updated after the tax collector provided the clerk with the tax collector's statement. We hold that the clerk is so required.
Id. at 445 (emphasis added). The court reasoned that because the statutes require the tax roll to be updated by July 1, and the 2000 tax roll contained Delta's updated address, the clerk erred by sending notice to Delta's old address in September without first obtaining an updated statement from the tax collector or determining if the 2000 tax roll was available. The court ruled that to hold otherwise would deny Delta its property without due process of law, citing to Mullane and Mennonite. While acknowledging the statutory notice scheme in sections 197.502(4) and 197.522(1), the court stated:
While the clerk should use the tax collector's statement when preparing the tax sale notices, circumstances may warrant some additional action by the clerk. As the Fourth District recently held:
[T]here could come a point in time when the tax collector's statement no longer represents those who are entitled to notice. That is precisely what happened here. The clerk waited approximately five months before noticing and setting the tax deed sale; during the time lapse, the name on the tax assessment roll changed.

Baron v. Rhett, 847 So.2d 1032, 1035 (Fla. 4th DCA 2003). In the instant case, the clerk waited more than three months before noticing and setting the tax deed sale. By that time, the titleholder's address had changed. The notice of the tax deed sale should have been mailed to the titleholder's new address if that address was "reasonably ascertainable" from the latest tax assessment roll. See Mennonite, 462 U.S. at 800, 103 S.Ct. 2706.
Id. at 448 (emphasis added).

Application to the Instant Case
While the facts of Delta Property Management are distinguishable from the instant case, the supreme court acknowledged *511 that there may be circumstances in which the statutory notice procedure is no longer reasonably calculated to provide actual notice. The instant case is just such a case.
It is undisputed that the clerk complied with the statutory notice requirements. But under Mullane, the question remains: Was that notice "reasonably calculated, under all the circumstances," to apprise the Rosados of the tax deed sale and afford them an opportunity to present their objections? Those circumstances, as found by the trial court, were that (1) the Rosados notified both the tax collector and the clerk of court by certified mail of their change of address prior to the clerk sending out notice of the tax sale; (2) neither the tax collector nor the clerk updated the Rosados' address in the assessment roll or clerk's records; (3) the Rosados did not receive notice of the application for tax deed nor of tax deed sale; and (4) the Rosado's failure to receive notice was "completely the fault of the taxing agencies." In addition to the trial court's findings was the undisputed evidence that the sheriff's return of service indicated that "subject no longer resides [at the posted address]." In light of these circumstances, the statutory notice provided in this case was not reasonably calculated to apprise the Rosados of the impending tax deed sale where the tax collector and the clerk knew or should have known that the address listed on the tax roll was incorrect. Mullane.
While the Alwani opinion reaches a contrary conclusion and was binding on the trial court below, it is neither binding on nor persuasive to this Court in light of Dawson and Delta Property Management. Although the trial judge in the instant case felt bound to follow Alwani, she questioned its reasoning, stating,
The owners in Alwani, like the Rosados in the present case, took the effort to notify both the tax collector and the clerk of their change of address. Their failure to receive notice was completely the fault of the taxing agencies. Even if the owners in Alwani had been aware that property taxes were due, their knowledge of the tax delinquency would not constitute notice of the impending tax sale, and the State was constitutionally obligated to provide notice of the tax sale to the owners. Dawson v. Saada, 608 So.2d 806, 810 (Fla.1993).
The trial court was right to question Alwani in light of Dawson and Delta Property Management. Dawson flatly rejected two of the analytical underpinnings of Alwani. First, the Alwani opinion relies on section 197.332, Florida Statutes (1987), which stated that "[a]ll owners of property shall be held to know that taxes are due and payable annually and are charged with the duty of ascertaining the amount of current or delinquent taxes and paying taxes before the date of delinquency." That court distinguished away Mullane and Mennonite on the ground that "neither of those cases concerned a lack of notice of the kind involved here to a taxpayer who knows that taxes are unpaid." Dawson rejected the same argument based on the same statute, stating:
While we agree that all taxpayers are under an obligation to know the tax status of their property, "knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983). The duty imposed upon owners of Florida land by section 197.332 does not relieve the state of its constitutional obligation to inform interested parties of the pendency of a tax sale. See id. at 799, 103 S.Ct. at 2711-12.
*512 Dawson, 608 So.2d at 809-10. The above quoted provision in section 197.332, Florida Statutes (1987) was deleted by Chapter 91-295, Laws of Florida.
Dawson also rejected the argument relied upon in Alwani that section 197.404, Florida Statutes (1987), prohibits a challenge to a tax deed sale based on lack of notice. That section provided, "[a] sale or conveyance of real or personal property for nonpayment of taxes shall not be held invalid except...." The court in Alwani noted that there were no exceptions for lack of notice. However, the supreme court in Dawson stated:
Under Dawson's interpretation of these sections, a tax deed would be valid even without compliance with any of the statutory notice requirements. If this Court approved Dawson's interpretation of sections 65.081(3) and 197.404, then we would also be required to find the statutes constitutionally invalid insofar as they would permit the sale of property without notice to the affected owners. Such a result contravenes the "elementary and fundamental requirement of due process[,]" namely notice to the interested parties. Mullane, 339 U.S. at 314, 70 S.Ct. at 657. Mindful of our obligation to interpret statutes so as to uphold rather than invalidate them, we reject Dawson's interpretation.
Id. at 809.
Delta Property Management rejected the remaining underpinning, that requiring the clerk to go beyond mailing notice to the address listed on the tax collector's statement would be an onerous burden. 875 So.2d at 446. As Judge Harris stated in his dissent in Kidder:
Constitutional rights cannot be denied merely because the recognition of such rights will be inconvenient to the tax collector or clerk. Nor does the constitution make an exception because such rights might burden the collection of taxes.
Kidder, 821 So.2d at 1111.
The Vosilla partners nevertheless argue that Dawson mandates an affirmance. They note that the court in Dawson stated that "[s]ection 197.522(1) meets constitutional due process requirements by mandating notice reasonably calculated to apprise landowners of the pending deprivation of their property." Id. at 808. They also point to footnote 1 in Dawson, which stated:
The record reflects that the clerk complied with the notice requirements of section 197.522(1).[FN1]
FN1. The record does not indicate whether the owners actually received notice because the notice was not mailed to their present residence. However, section 197.522(1)(d), Florida Statutes (1987), specifically provides that "failure of anyone to receive notice as provided herein shall not affect the validity of the tax deed issued pursuant to the notice." Thus, the relevant issue is whether the clerk complied with the notice provisions, not whether the owner actually received notice.
Id.
However, there are important distinctions between Dawson and the instant case. First, the issue in Dawson was not whether section 197.522(1) was constitutional. It was whether failure to comply with section 197.522(2) was constitutional. The court held that subsection (1) was mandatory but subsection (2) was directory. Thus, if the clerk complied with subsection (1), failure to comply with subsection (2) did not render the notice unconstitutional. Thus, the statement in Dawson that subsection (1) meets constitutional due process requirements *513 can be read as dictum rather than the holding of the case. Certainly the court did not make this statement in the context of an as applied challenge to subsection (1) such as is present in the instant case.
Second, Dawson did not involve evidence that the property owners notified the authorities of their change of address. While it is true that the court noted that notice was not sent to the property owners' current address and that failure to receive notice is not a defense, there was no allegation that notice was not sent to the correct address because the clerk or the tax collector failed to properly record a change of address.
Finding Alwani unpersuasive, we now turn to Eurofund. Although Eurofund cited to both Dawson and Alwani, it lacked any analysis of the above distinctions between those two cases. It is not clear why Eurofund followed Alwani in light of Dawson. Nor is there any constitutional analysis in Eurofund. Two judges on this Court stated in Kidder that the holding in Eurofund violates Mullane.
In addition to the faulty underpinnings of Alwani and Eurofund, there is a glaring inconsistency between Eurofund and Kidder. In Kidder, two judges rested their decisions to affirm on the fact that the property owner made no effort to notify authorities of their address change, while this Court in Eurofund affirmed despite the property owner's completion of a change of address form. Read together, these cases stand for the dubious proposition that a property owner should not be heard to complain about lack of notice if he failed to notify authorities of an address change, but even if it did provide authorities notice, he is still out of luck.[2]
Eurofund can be distinguished from the instant facts on the ground that the property owner in Eurofund notified the property appraiser of his change of address, while the Rosados notified the tax collector and the clerk of court. However, this distinction does not seem significant. The property appraiser, tax collector and clerk of court all play a part in the process. The property appraiser prepares the assessment roll pursuant to section 193.114(1)(a), Florida Statutes (2000). The tax collector sends a statement of person to be notified of the tax deed sale based on the latest assessment roll pursuant to section 197.502(4), Florida Statutes (2000). And the clerk of court sends the notice out pursuant to section 197.522(1)(a), Florida Statutes (2000). However, neither the statutes nor the administrative rules designate to which of these agencies a property owner must submit a change of address form in reference to notice of a tax deed sale.
Accordingly, we believe the better course is to recede from Eurofund and certify conflict with Alwani. Judge Harris' comment in Kidder on the trial court's wisdom and the need to correct bad law applies with equal force in this case. He stated:
Although the trial court herein seemed to be in sympathy with the landowner's argument that the standard appearing in Mullane was not met by the notice in this case, it seemed to feel compelled to grant the summary judgment under the authority of our decision in [Eurofund]. Good law is the responsibility of every judge and every lawyer. If the trial court has a reasoned opinion that we have overlooked something or have misconstrued *514 the law in any fashion, it should follow our decision as it interprets it but bring its concern to our attention. It does not bring credit to us to institutionalize bad law. We should recognize that some of our best legal minds are on the trial court and we should never discount a reasonable suggestion from a trial judge that perhaps we have made a mistake merely because we have ruled on the issue before, unless such prior ruling specifically addresses the current challenge. We better perform our review responsibility if we consider all reasoned challenges. Our law is stronger if it meets the challenge; if we cannot satisfactorily justify our previous opinion in light of the new challenge then we should adjust our position accordingly. Consistency is good but being consistently wrong is no virtue.
Kidder, 821 So.2d at 1109.
Accordingly, we hold that under the particular facts of this case, the statutory notice was not sufficient to meet the due process requirements of Mullane and Mennonite. In doing so, we recede from Eurofund to the extent that it conflicts with this opinion. We also certify conflict with Alwani.
REVERSED.
SHARP, W., PETERSON, GRIFFIN, THOMPSON, SAWAYA, PALMER, ORFINGER, MONACO and TORPY, JJ., concur.
NOTES
[1] We decide this appeal en banc because its resolution results in our receding from prior precedent of this court. See Fla. R.App. P. 9.331(a).
[2] That same inconsistency and troubling logic follows from reading Alwani and Evans together.