948 So.2d 1033 (2007)
GREENTREE SERVICING, LLC, etc., Appellant,
v.
Michael J. DECANIO, et al., Appellee.
No. 5D06-1280.
District Court of Appeal of Florida, Fifth District.
February 23, 2007.
*1034 Elizabeth T. Frau, of Echevarria, Codilis & Stawiarski, Tampa, for Appellant.
Dock A. Blanchard, of Blanchard, Merriam, Adel & Kirkland, P.A., Ocala, for Appellee.
MONACO, J.
This appeal concerns the effect of a tax deed on a security interest in a mobile home that is placed on the real property that was the subject of the deed. The appellant, Greentree Servicing, LLC, has a security interest in the mobile home. The appellee, Marvin Grossman, purchased the tax deed. The trial court granted a summary judgment in favor of Mr. Grossman because the mobile home had become a part of the real property and because Greentree failed to take the available steps to protect its interest.
In the year 2000, Greentree's predecessor in interest loaned Michael J. Decanio and Helen N. Buran funds to purchase a mobile home. As security for its loan, Greentree received back an installment loan contract and security agreement. Greentree's interest was thereafter noted as a first lien on the certificate of title issued by the Department of Motor Vehicles to Mr. Decanio and Ms. Buran.
The mobile home was placed on a parcel of land purchased by Mr. Decanio a few months before he and Ms. Buran received their loan from Greentree. According to the summary final judgment rendered in this case, there was "no dispute that the mobile home at issue is connected to normal and usual utilities and is tied down." The affidavits filed in support of summary judgment indicate that the mobile home is permanently attached to the land by tie downs and has electricity running to it. In addition, the home is serviced by a water pump and septic system. In 2002, Mr. Decanio applied for and was granted homestead status on his property pursuant to section 196.031, Florida Statutes (2002), strongly suggesting that the mobile home was to be treated as part of the realty. In addition, the license plate for the mobile home was removed, and permanent RP stickers were issued and attached to the improvement.
Because real property taxes were not paid on the Decanio parcel, tax sale certificates were issued and sold to Mr. Grossman in accordance with section 197.432, Florida Statutes (2002). Mr. Grossman paid $38,200 to the County, and acquired the title to the parcel by tax deed. See § 197.502, Fla. Stat. (2004). In 2003, the Marion County Property Appraiser had *1035 assessed the Decanio parcel at $61,379, before deduction of the $25,000 homestead exemption. The assessment valued the land at $5,778, and the "Buildings" at $53,671. The remainder of the assessment was assigned to "miscellaneous."
In 2004, Greentree brought suit against Mr. Decanio and Ms. Buran for replevin of the mobile home on which it held a lien. Ms. Buran had, however, apparently died in the interim. Mr. Grossman learned of the suit and was granted authority to intervene by the court. He then cross-claimed for declaratory relief against Greentree and to seek to quiet his title in the parcel. Specifically, Mr. Grossman sought to be declared the fee simple owner of the land, as improved by the mobile home, and sought to cancel the Greentree lien as a cloud on his title.
Affidavits and discovery were properly filed with the court, and both sides moved for summary judgment. The trial court granted summary judgment in favor of Mr. Grossman, holding that the mobile home had become affixed to the land and was part of the realty. Although Greentree argued that it had not received proper notice prior to issuance of the tax deed, the trial court rejected its position, finding that because it had not taken the statutory steps to protect itself, it was not entitled to notice of the issuance of the deed. We affirm.
The legislature has provided guidance on how mobile homes are to be taxed. Sections 193.075(1) and (2), Florida Statutes (2004)[1], state:
(1) A mobile home shall be taxed as real property if the owner of the mobile home is also the owner of the land on which the mobile home is permanently affixed. A mobile home shall be considered permanently affixed if it is tied down and connected to the normal and usual utilities. . . . A mobile home that is taxed as real property shall be issued an "RP" series sticker as provided in s. 320.0815.
(2) A mobile home that is not taxed as real property shall have a current license plate properly affixed as provided in s. 320.08(11). Any such mobile home without a current license plate properly affixed shall be presumed to be tangible personal property.
Section 320.015, Florida Statutes (2004), also addresses whether a mobile home is to be considered real or personal property and does so in a language similar to that found in section 193.075. Section 320.015 reads in pertinent part:
(1) A mobile home, as defined in s. 320.01(2), regardless of its actual use, shall be subject only to a license tax unless classified and taxed as real property. A mobile home is to be considered real property only when the owner of the mobile home is also the owner of the land on which the mobile home is situated and said mobile home is permanently affixed thereto. Any prefabricated or modular housing unit or portion thereof not manufactured upon an integral chassis or undercarriage for travel over the highways shall be taxed as real property once it is permanently affixed to real property . . .
(2) Notwithstanding the provisions of subsection (1), any mobile home classified by a seller or a lender as personal property at the time a security interest was granted therein to secure an obligation shall continue to be so classified for all purposes relating *1036 to the loan and security interest, at least as long as any part of such obligation, or any extension or renewal thereof, remains outstanding. Classification of a mobile home as personal property by a seller or a lender shall not prohibit the owner from having the mobile home classified and taxed as real property under subsection (1).

[Emphasis added].
Here, it is quite clear, as the trial court noted, that the mobile home was tied down and connected to normal and usual utilities. Moreover, as specified in section 193.075, it had no license plate attached to it, and had "RP" series stickers properly placed on it. Thus, the part of the statutory equation requiring the mobile home to be permanently affixed to the real property is rather obvious in this case.
In General Electric Capital Corp. v. Sohn, 566 So.2d 841 (Fla. 1st DCA 1990), a case quite similar to the present controversy, the First District affirmed a trial court's determination that a tax deed issued with respect to a parcel of land on which was located a mobile home extinguished an otherwise valid security interest held by a creditor. Once the owner permanently affixed the mobile home to his lot in accordance with section 320.015, it became subject to real property tax treatment.
In Sohn, however, the owner of the land and the owner of the mobile home was the same individual. The one question remaining with respect to the issue of whether the mobile home is to be treated as part of the real estate for real property tax purposes in the present case is whether the "owner of the mobile home is also the owner of the land on which the mobile home is permanently affixed." Both pertinent statutes make reference to this requirement. In the case before us, Mr. Decanio owned the land individually, but Mr. Decanio and the now deceased Ms. Buran owned the mobile home. We conclude, however, that the ownership requirements of the statutes are nevertheless satisfied.
The case of Mikos v. King's Gate Club, Inc., 426 So.2d 74 (Fla. 2d DCA 1983), is instructive in this regard. There, the appellee corporation owned a fee simple interest in a mobile home park, and "members" of the community paid membership and maintenance fees in exchange for a site on which to locate a mobile home. Each member held a certificate that stated that members do not hold an interest in the land. Nevertheless, members had the right to sell their certificates to third parties, subject to right of first refusal of the corporation. The corporation advertised the park as an "ownership park," meaning that in the event that the corporation dissolved, the corporation's assets would be divided among the members holding certificates. Mobile homes in the park were tied down to cement pads and the wheels, axles, springs, and tires were removed.
The corporation and members filed suit to enjoin the county property appraiser from taxing the mobile homes as real property. Though the trial court concluded that the mobile homes were part of the real property because they were permanently affixed to the land, it found that the members were not "owners" for purposes of section 320.015, and that consequently the mobile homes could not be taxed as real property. The Second District reversed and held that although the members did not hold legal title to the land on which their mobile homes were located in the strictest sense of the term, the concept of "owner" was not to be so narrowly defined as to include only legal titleholders. The court concluded that the members held the land "by equitable title . . . *1037 indirectly by . . . membership representing the . . . member's proprietary interest in a corporation owning a fee." Id. at 76 (citing 1975 Op. Atty. Gen. 075-159 (June 3, 1975)). Thus, the mobile homes could be taxed as real property because the homes were permanently affixed to the land and "each member has practical dominion over his designated site which is essentially equivalent to ownership." Id.
In Nordbeck v. Wilkinson, 529 So.2d 360 (Fla. 2d DCA 1988), the Second District came to a similar outcome where the taxpayer again asserted that he was not the owner of the land upon which the mobile home was affixed because he owned only a membership certificate in a corporation that held legal title to the land. The appellate court, citing Mikos, again held that he was the "owner of that land for present purposes." Id. at 361.
Here, Mr. Decanio was an owner of the mobile home and was the sole owner of the real estate upon which it was affixed. We think he had at the very least "practical dominion" over the land and mobile home. As section 320.015(2) points out, Mr. Decanio could choose to have the mobile home treated as part of the real estate and the fact that he and Ms. Buran gave a security interest in the mobile home to Greentree would not "prohibit the owner from having the mobile home classified and taxed as real property." Thus, we agree with the trial court that the parcel, as improved, was properly classified and taxed as real property, and that it was, therefore, subject to the tax certificate and tax deed procedures articulated in Chapter 193.
We agree, as well, that Greentree was not entitled to notice of the tax deed process. Greentree asserts that it was denied due process because it was not given notice of the tax deed sale, even though it had a valid and reasonably identifiable security interest in the mobile home. Greentree centers its argument on section 197.522, Florida Statutes (2004). Mr. Grossman contends, and we agree, that Greentree did not take the required statutory steps to put the tax assessor or clerk on notice of its interest, and that these county officials were not required to use exhaustive measures to find any and all interested parties prior to a tax sale.
Section 197.522(1)(a) provides that:
The clerk of the circuit court shall notify, by certified mail with return receipt requested or by registered mail if the notice is to be sent outside the continental United States, the persons listed in the tax collector's statement pursuant to s. 197.502(4) that an application for a tax deed has been made. Such notice shall be mailed at least 20 days prior to the date of sale. If no address is listed in the tax collector's statement, then no notice shall be required.
[Emphasis added]. The next subsection of the statute requires the sheriff of the county in which the property at interest is located to serve a notice of the tax sale to the legal titleholder at least 20 days prior to the sale. Section 197.502(4), Florida Statutes (2004), the statute referenced in section 197.522(1)(a), lists the parties entitled to notice of a tax sale. Those parties are described in relevant part as:
(a) Any legal titleholder of record if the address of the owner appears on the record of conveyance of the lands to the owner. However, if the legal titleholder of record is the same as the person to whom the property was assessed on the tax roll for the year in which the property was last assessed, then the notice may only be mailed to the address of the legal titleholder as it appears on the latest assessment roll.
(b) Any lienholder of record who has recorded a lien against the property described *1038 in the tax certificate if an address appears on the recorded lien.
(c) Any mortgagee of record if an address appears on the recorded mortgage.
. . .
(e) Any other lienholder who has applied to the tax collector to receive notice if an address is supplied to the collector by such lienholder.
. . .
(g) Any lienholder of record who has recorded a lien against a mobile home located on the property described in the tax certificate if an address appears on the recorded lien and if the lien is recorded with the clerk of the circuit court in the county where the mobile home is located.
The Florida Supreme Court construed section 197.502(4) in Dawson v. Saada, 608 So.2d 806 (Fla.1992). In that case the high court held that the "legislature has the authority to determine the extent and character of notice" required to be provided prior to the sale of land for nonpayment of taxes. Id. at 808. The relevant issue is whether the clerk complies with the notice requirements of section 197.522, not whether the notice is actually received. The court held further that "the failure of anyone to receive notice as provided in section 197.522(1) does not affect the validity of the tax deed" so long as the notice requirements of the statute were followed. Id. at 808.
Greentree was required to be notified of the tax sale if it fit within one of the lienholder categories listed in section 197.502(4). Although Greentree is listed as the first lienholder on the certificate of title to the mobile home, it brought forth no evidence during the summary judgment process that it recorded its lien in accordance with subsections (4)(b) or (g) of the statute, or that it requested notice of a tax sale in accordance with subsection (4)(e). Although Greentree argues that it should have received notice because its interest was readily ascertainable by a search of the records of the Department of Motor Vehicles, we have previously held that "the clerk is not required to search all public records available to determine the actual status of ownership." Hutchinson Island Realty, Inc. v. Babcock Ventures, Inc., 867 So.2d 528, 531 (Fla. 5th DCA), review denied, 892 So.2d 1012 (Fla.2004). The clerk did exactly what was required by the statute. As Greentree failed to take the steps necessary for it to obtain notice of the statutory issuance of a tax deed, its assertion of a due process violation is ineffective. Compare Rosado v. Vosilla, 909 So.2d 505 (Fla. 5th DCA 2005), affirmed, 944 So.2d 289 (Fla.2006)(relief granted where the failure of the owners of real property to receive the notice of sale was entirely the fault of the taxing agencies).
AFFIRMED.
PLEUS, C.J. and SAWAYA, J., concur.
NOTES
[1] This court upheld the constitutionality of section 193.075 against an equal protection challenge in Zapo v. Gilreath, 779 So.2d 651 (Fla. 5th DCA 2001).