821 So.2d 1106 (2002)
Martin Kieran KIDDER, Appellant,
v.
Emilio CIRELLI, Kelly E. Scofield, et al., Appellee.
No. 5D01-3222.
District Court of Appeal of Florida, Fifth District.
June 7, 2002.
Rehearing Denied August 2, 2002.
G. Larry Sims, of Black, Sims, Burnett & Birch, LLP, Daytona Beach, for Appellant.
Stephen P. Sapienza, Bunnell, for Appellees.
GRIFFIN, J.
Appellees, plaintiffs below, filed a complaint against appellant and unknown defendants seeking to quiet title to vacant land located in Volusia County to which appellees held title pursuant to a Volusia County tax deed after sale of the property on December 5, 2000.
Appellant filed his answer, affirmative defenses and claim for declaratory relief, claiming that he had no notice of the application for tax deed. Apparently, the address on the tax roll was that of the subject property, which was vacant. As a result, the clerk's certified mailing to appellant was returned, marked "No Such Number" at such address. The sheriff, likewise, was unable to serve appellant. The trial court entered summary final judgment in favor of the plaintiffs, citing this court's decision in Eurofund Forty-Six, Ltd. v. Terry, 755 So.2d 835 (Fla. 5th DCA 2000) and Alwani v. Slocum, 540 So.2d 908 (Fla. 2d DCA), review denied, 548 So.2d 662 (Fla.1989).[1]
*1107 Appellant appeals claiming that Florida Statutes Section 197.502(4) is unconstitutional because due process requires the clerk to make a good faith effort to locate and notify a "property owner whose property is about to be sold." Appellant alleged that he was the owner of a homestead parcel in Volusia County and had the tax rolls been searched, another address for him would have been found.
We see no due process violation in the facts of this case. Appellant concedes that the statutory procedure for giving him notice of an application for a tax deed on property he owned was complied with. He contends, however, that the statute has a defect of constitutional dimension because it does not require the clerk to search for an owner whose whereabouts are "easily ascertainable." This question has been repeatedly answered by Florida courts in the negative. See, e.g., Dawson v. Saada, 608 So.2d 806 (Fla.1992); Bullock v. Houston Realty & Inv., Inc., 739 So.2d 1251, 1254 (Fla. 4th DCA 1999); Alwani, supra.
The only address provided to the tax collector for the owner of this property was that of the property itself. Since it is apparently a vacant lot, the address was invalid for receipt of mail and the notice by certified mail was returned undelivered. Appellant proposes that when the undeliverability of the mailed notice to the owner became known to the clerk, due process required that the clerk search for him. He suggests there's a duty to look in the telephone book or search elsewhere in the county's records, presumably because that is where another address for him appeared. But those are not the only places where a person's address might be "readily ascertainable" if the time is taken or the effort is made to inquire. Where does "due process" require the clerk to look? For how long?
The statutory scheme creates a reasonable balance between the public's need to collect taxes and the individual's right to be notified of governmental action taken against his title to the property. A rule that requires a clerk to find a better address for the owner if it is "easily ascertainable" introduces the kind of uncertainty that discourages participation in the tax certificate device for tax collection. Dawson, 608 So.2d at 808-09.
As the high court in Dawson reiterates, the knowledge of a property owner that he owes taxes and has not paid them does not provide notice that a tax sale is pending and does not obviate the requirement of notice, which is the clerk's statutory duty. Dawson, 608 So.2d at 810. That does not mean, however, that the owner does not bear any responsibility for his correct address being on the tax roll so that he may receive notices. This is not a game of hide and seek. The appellant knew he owed taxes and had not paid taxes. Presumably he was also not receiving tax bills. He certainly knew there was no mail delivery to this vacant lot. No claim is made that appellant ever took any steps to provide a correct address to taxing authorities or discover why he was not receiving tax bills. A person in the position of appellant has no right to complain that the clerk did not look hard enough for him.
AFFIRMED.
COBB, J., concurs specially, with opinion.
HARRIS, J., dissents, with opinion.
*1108 COBB, J., concurring specially.
Although it appears that our prior opinion in Eurofund Forty-Six, Ltd. v. Terry, 755 So.2d 835 (Fla. 5th DCA 2000) is in direct conflict with Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the facts in the instant case require an affirmance based upon Dawson v. Saada, 608 So.2d 806 (Fla.1992). In the instant case, unlike Mullane, the failure of the tax rolls to reflect Kidder's correct mailing address is his fault and not that of the county. This is because it was Kidder who furnished the incorrect address to the taxing agencies; it is not simply "because he failed to contact the tax collector when he received no tax bill," the straw man argument erected by the dissent.
HARRIS, J., dissenting.
I respectfully dissent.
The majority holds that the owner's failure to know and to notify the tax collector that the tax collector's records reflect a defective address for the owner of a particular piece of property forfeits such owner's constitutional right to notice in the event a tax sale is scheduled. The majority maintains that giving notice of an impending tax sale is not a game of hide and seek; I suggest it is not a blame game.
There is no indication as to why the tax collector recorded an incorrect address in this instance. Presumably the owner's address appeared in the deed of conveyance. The deed may have contained multiple parcels and, in separating the parcels for tax purposes, the tax collector's office may have projected an incorrect address. Or perhaps the deed contained an incorrect address. In any event, the owner failed to pay taxes on the subject property, tax certificates issued and subsequently a tax sale was scheduled. In conducting tax sales, what is the State's obligation and what are the owner's rights?
Section 197.502(4)(a), Florida Statutes, requires that the tax collector notify the clerk of the circuit court that the "legal titleholder of record if the address of the owner appears on the record of conveyance" must be notified before the tax sale unless it is the same owner who appears on the latest assessment roll. Thus, the statute requires that the notice be given in accordance with the assessment roll, prepared by the taxing authorities, rather than the address actually appearing on the deed of conveyance which the owner knows is correct and which he knows has been provided to the taxing authorities. This peculiar priority of address in notification is ameliorated and perhaps explained by the requirement in section 197.522(1)(a), Florida Statutes, which requires the clerk to notify such owner by "certified mail with return receipt requested." But what happens if the return shows that the address selected by the taxing authorities does not exist so that the clerk, prior to the sale which will deliver the owner's title to the tax certificate speculator, knows that the owner has not been given notice?
The United States Supreme Court in Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), I believe, has answered this question. The Court recognized the problems inherent in notifying persons whose names or addresses were not reasonably possible or practicable to obtain and approved a less stringent notice requirement. However, the Court cautioned, exceptions in the name of necessity do not sweep away the rule that within the limits of practicality notice must be such as is reasonably calculated to reach interested parties.
*1109 In Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the owner of the interest therein involved (mortgagee) was entitled to have notice sent to his "last known address" (not to some address listed by the tax collector) prior to a tax sale. Further, the Mennonite Court referenced its former Mullane opinion which required that a State must provide notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of an action and afford them an opportunity to present their objections. Although the address of the mortgagee was not complete as listed in the recorded mortgage, the Court "assumed" that the address could have been ascertained by reasonably diligent efforts. The court held that notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practices, if its name and address are reasonably ascertainable.
Under the standard adopted by the majority herein, and contrary to the Mennonite holding, the mortgagee in Mennonite would have been entitled to no relief because it had not assured that its proper address was recorded in the records of the tax collector. Why did the legislature mandate that a return receipt be requested? Was it merely to show that an effort had been made to serve the owner by mail? Or was it to provide additional protection to the owner if it appeared that the address listed by the tax collector was in error or not current?[1] I urge the latter interpretation is required both by fairness and by the Constitution.
In the case at bar, the address listed on the tax collector's statement was a nonexistent address. The certified mail return advised the clerk that there was "no such number"[2] recognized by the post office. *1110 Therefore, the clerk proceeded to sell the owner's property knowing full well that the owner was not notified of the sale.
The United States Supreme Court in Mullane held that before the State may deprive an individual of a property right "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action" must be provided. A state statute which is construed in a manner which does not to meet the Mullane requirement is simply unconstitutional.
Constitutional rights are not general; they are specific. Such rights are not given only to some or even to most; they are granted to each and every individual. A statute designed to give notice to 95% of landowners effectively denies due process to the 5% who are ignored. A statutory plan which contemplates that effective notice will be given generally is inadequate; the plan must be calculated to give notice to all affected owners. By limiting the requirement to give notice only to those addresses appearing on the tax collector's statement without recognizing that an invalid or incorrect address may sometimes appear is not calculated to give notice to all interested landowners. As the supreme court noted in Dawson v. Saada, 608 So.2d 806 (Fla.1992), every landowner has a vested property right which entitles him or her to notice of a pending tax sale. Due process, says the supreme court in that case, requires notice reasonably calculated under all the circumstances to apprise all interested parties of the pendency of the action and afford them an opportunity to present their objections. Thus, the test for the validity of notice under section 197.522(1)(a), Florida Statutes, is not merely whether the notice was sent to the address appearing on the tax collector's statement, it is whether the notice was sent to the owner's address and was thus sufficient to reasonably apprise the landowner of the pendency of the action. Certainly sending notice to the former address of the owner is calculated to apprise the landowner of the notice even if the owner has moved unless the return service puts the clerk on notice of a problem.[3] It is another thing, however, if the address listed on the tax collector's statement could not possibly give the landowner notice because it is a nonexistent address.
The majority is concerned that the owner was "playing hide and seek" with the tax collector. There is no indication that this owner deliberately concealed his address. The majority imposes a burden on *1111 the owner to assure that the tax collector has the correct address or else suffer the loss of his or her right to constitutional due process. If the owner does not receive a tax bill, this reasoning goes, he is legally bound to find out why or suffer the consequences. The consequence should be that tax certificates will issue. At this point, there is no due process concern. But when the tax certificates are about to lead to a tax sale at which the owner may lose his property, the constitutional right to notice springs into place. In my view, it does not matter that an address is missing or incorrect because of a mistake of the tax collector or a mistake or inadvertence of the owner. If the clerk becomes aware, as by the return of service (again there must be some reason for statutorily requiring this return of service), and if the address is reasonably ascertainable, then I believe the constitution requires that the clerk proceed no further with the sale until the owner has been notified.[4]
Constitutional rights cannot be denied merely because the recognition of such rights will be inconvenient to the tax collector or clerk. Nor does the constitution make an exception because such rights might burden the collection of taxes. Certainly errors made in the tax collector's office should not be attributed to the landowner. Many cases have upheld failed notices on the theory that since the landowner knows he or she has an obligation to pay taxes, the failure to pay the tax should put such landowner on notice that a tax sale may be eminent and they have a duty to keep informed. This was never good constitutional law and now it is not the law. Our supreme court, recognizing the requirements set out by the United States Supreme Court in Mennonite held in Dawson v. Saada, 608 So.2d 806 (Fla.1992), "While we agree that all taxpayers are under an obligation to know the tax status of their property, `knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending.'" I suggest that the companion argument that one is obliged to see that the tax collector has his or her correct address is likewise insufficient to forfeit the constitutional right to due process. Even if the owner fails to make sure the tax collector has his correct address, still he is entitled to due process notice in the event a tax sale is scheduled if his address is readably available.
Sending a notice to a nonexistent address knowing it is a nonexistent address is not calculated to give the notice required by the Constitution to landowners before they are deprived of their property and a sale conducted knowing that the owner has not received notice without making a reasonable effort to find a proper address is contrary to Mullane. To satisfy the constitution, a statute which authorizes notice to be sent to the address listed in the tax collector's statement must contemplate *1112 that such address itself is calculated to provide proper notice.
NOTES
[1] The dissent suggests that the trial court "seemed to be in sympathy" with appellant's argument and suggests we should follow the wisdom of the trial court. We read the trial court's order as a rejection of appellant's argument and we have done no more than approve the trial court's decision. We do not rely on the Eurofund decision for our decision in this case because, unlike Eurofund, this case involves a situation where appellant makes no claim that he undertook to provide a proper address to the clerk.
[1] The concurring opinion mentions our previous opinion in Eurofund Forty-Six, Ltd. v. Terry, 755 So.2d 835 (Fla. 5th DCA 2000), and suggests that it is violative of Mullane. I agree. But the opinion distinguishes this case because "the failure of the tax rolls to reflect Kidder's correct mailing address" was his fault, presumably because he failed to contact the tax collector when he received no tax bill. I disagree. The United States Supreme Court in discussing this notice problem does not speak of the fault of the owner but only of the obligation of the State. If the owner's knowledge that he has not paid taxes and that therefore he is in a position to suffer severe consequences does not disqualify him from his right to constitutional notice before the tax sale then I do not believe that mere knowledge that he has not received a tax bill, even assuming he is aware of it, will have that effect. Although the trial court herein seemed to be in sympathy with the landowner's argument that the standard appearing in Mullane was not met by the notice in this case, it seemed to feel compelled to grant the summary judgment under the authority of our decision in Terry. Good law is the responsibility of every judge and every lawyer. If the trial court has a reasoned opinion that we have overlooked something or have misconstrued the law in any fashion, it should follow our decision as it interprets it but bring its concern to our attention. It does not bring credit to us to institutionalize bad law. We should recognize that some of our best legal minds are on the trial court and we should never discount a reasonable suggestion from a trial judge that perhaps we have made a mistake merely because we have ruled on the issue before, unless such prior ruling specifically addresses the current challenge. We better perform our review responsibility if we consider all reasoned challenges. Our law is stronger if it meets the challenge; if we cannot satisfactorily justify our previous opinion in light of the new challenge then we should adjust our position accordingly. Consistency is good but being consistently wrong is no virtue.
[2] Even though the Florida Supreme Court upheld a tax deed involving service sent to an incorrect address in Mullin v. Polk County, 76 So.2d 282 (Fla.1954), it concluded its opinion by stating:

We do not think that in all circumstances we are justified in deciding that the decree was void because due process was denied the appellant by the clerk's acting in accordance with the statute but not meanwhile detecting a mistake that there was no reason to expect him to discover.
In the case at bar, the return of the certified mail indicating that the address was nonexistent gave the clerk every reason to expect that a mistake had been made and that at least a minimal effort should be made to find the landowner.
[3] It is not unreasonable to expect the clerk to make some effort to find an address if the certified mail return shows a problem. Compliance with the Mullane standard in application for tax deed cases would not impose an unreasonable burden on the clerk. It does not require verification of all of the addresses on the tax roll nor does it require verification of all addresses involved it the particular scheduled tax sale. It only requires that when the clerk is informed by the post office that an address is nonexistent or otherwise invalid that some effort, reasonable under the circumstances, be made to find a better address. This number should not be great. The United States Supreme court has suggested that at least the tax rolls should be checked for a better address. Here, this minimal search would have provided the clerk with an address which would have properly provided notice. The Constitution requires no less.
[4] The majority suggests that to require the clerk to make even a minimal effort to locate the owner might hinder the sale of tax certificates. Tax certificates are sold to investors who pay the delinquent tax for a guaranteed agreed interest secured by a lien on the property. Their commercial aim is met when they recover their investment together with their agreed interest. Their investment becomes a winning lottery ticket when the owner fails to receive notice or when the owner is so destitute that even with notice he or she cannot pay the accumulated taxes and the investor is able to acquire title to property often worth many times the value of the delinquent taxes. If through minimal efforts the clerk can find the owner the worst that can happen is that the investor will receive the return of his investment together with his bargained-for interest and all costs. How will that discourage legitimate investors?