847 So.2d 1032 (2003)
Marilyn S. BARON, individually and as trustee and Ronald I. Baron, individually, Appellants,
v.
Errict RHETT and Errict Rhett Youth Foundation, Inc., a Florida nonprofit corporation, Appellees.
No. 4D02-3475.
District Court of Appeal of Florida, Fourth District.
May 14, 2003.
Rehearing Denied July 7, 2003.
*1033 Marc Birnbaum of Law Offices of Marc Birnbaum, P.A., Miami, and Avi J. Litwin, Miami Beach, for appellants.
Gregg H. Metzger and Jeffrey D. Feldman of Feldman, Gale & Weber, P.A., Miami, for appellees.
TAYLOR, J.
Appellants, Marilyn and Ronald Baron, appeal a summary judgment order quieting title to real property in favor of appellees, Errict Rhett and the Errict Rhett Youth Foundation, Inc. We affirm.
The current controversy began in 1998 when Deryl P. Lane, then owner of the subject property, failed to pay the ad valorem taxes for that year. Broward County consequently issued a tax certificate On May 28, 1999. When Lane did not redeem the tax certificate within two years, the holder of the certificate applied for a tax deed sale. Pursuant to the application, the tax collector prepared a title search and forwarded Lane's name and address to the clerk of court as the legal title holder listed in the public records and on the most current tax assessment roll. The title search was forwarded to the clerk of court on April 16, 2001. Five months later, on September 27, 2001, the clerk provided notice of the tax deed sale of the subject property to all parties listed on the tax collector's statement and filed a certificate of mailing such notices. Lane was the only party listed on the statement.
In the interim, Rhett met with Lane on June 26, 2001, for the purpose of buying the property in connection with his youth foundation. Rhett purchased the property from Lane for $20,000 by quitclaim deed and recorded the instrument in Broward County on June 28, 2001. However, as the parties later discovered, Lane, as grantor, accidentally failed to sign the deed.
Over the next few months, Rhett spent approximately $60,000 toward completion of the home. He obtained building and zoning permits in his name as the property's owner of record. During this time period, the Broward County Property Appraiser sent Rhett the proposed ad valorem tax assessment on the property for the year 2001. This assessment was sent to his home address. In November 2001, Rhett was sent a notice of ad valorem taxes on the property for that year, which he paid.
The tax sale was held on October 17, 2001, and the Barons were the successful bidders. They subsequently recorded the tax deed in Broward County. Rhett did not find out about the sale until he applied for a mortgage loan for the property on November 17, 2001. He subsequently recorded a second quitclaim deed in order to correct the absence of Lane's signature on the original quitclaim deed.
Rhett filed suit against the Barons, seeking cancellation of the tax deed and a quiet title decree in his favor. The Barons counter-claimed for quiet title as well. Both parties filed motions for summary judgment. The trial court ruled in favor of Rhett, holding that he was entitled to notice of the tax sale. On appeal, the Barons contend that the trial court erred in cancelling their tax deed and quieting title in favor of Rhett.
Section 197.502(4), Florida Statutes, states in pertinent part:
(4) The tax collector shall deliver to the clerk of the circuit court a statement that payment has been made for all outstanding certificates or, if the certificate is held by the county, that all appropriate *1034 fees have been deposited, and stating that the following persons are to be notified prior to the sale of the property:
(a) Any legal titleholder of record if the address of the owner appears on the record of conveyance of lands to the owner. However, if the legal titleholder of record is the same as the person to whom the property was assessed on the tax roll for the year in which the property was last assessed, then the notice may only be mailed to the address of the legal titleholder as it appears on the latest assessment roll.
* * *
(f) Any person to whom the property was assessed on the tax roll for the year in which the property was last assessed.
Section 197.522(1)(a), Florida Statutes, states:
The clerk of the circuit court shall notify, by certified mail with return receipt requested or by registered mail if the notice is to be sent outside the continental United States, the persons listed in the tax collector's statement pursuant to s. 197.502(4) that an application for a tax deed has been made. Such notice shall be mailed at least 20 days prior to the date of sale. If no address is listed in the tax collector's statement, then no notice shall be required.
Neither statute requires the clerk[1] to search all public records available to determine the actual status of ownership. Bostwick v. Clukies, 801 So.2d 961, 962 (Fla. 5th DCA 2001). Furthermore, the clerk has no general duty to determine the accuracy of the tax collector's statement. Id. The Barons claim that because Florida law requires that the clerk notify only those people listed on the tax collector's statement, and the law does not require the clerk to do any independent research to uncover additional interested parties, the trial court's decision was error. We disagree. The trial court did not rule that the clerk had a ministerial duty under Chapter 197 to conduct its own title search before mailing notice of the impending tax sale. Instead, the court determined that because the clerk failed to set the October 17 tax sale and mail notice thereof within a reasonable time after the application for tax deed was filed, the clerk could not rely upon the stale April 16 tax collector's statement in discharging its statutory and constitutional duty to provide notice of the tax sale to interested persons.
Delta Property Management v. Profile Investments, Inc., 830 So.2d 867 (Fla. 1st DCA 2002), is instructive. In that case, Delta failed to pay its 1999 ad valorem taxes and a tax certificate was issued. When Delta did not redeem the tax certificate within two years, Profile applied for a tax deed in April of 2000. The tax collector prepared a statement using Delta's address as it appeared on the 1999 tax assessment roll, the most recent one at the time. The tax collector forwarded the statement to the clerk on May 30, 2000. The clerk did not prepare a notice of tax sale and mail it to Delta until September 4, 2000. Delta was no longer located at the address specified in the statement. Consequently, the notice was returned to the clerk as undeliverable. Profile placed the winning bid at the tax sale and purchased the property. On appeal, Delta argued that the 2000 tax assessment had been prepared at the time the clerk mailed his notice of the tax sale. Therefore, had the *1035 clerk examined the more recent tax roll, he would have discovered that Delta's mailing address had changed. Id. at 869.
The first district rejected Delta's argument. First, the court held that there was no evidence that the 2000 tax roll was indeed prepared by July 1, 2000[2], or that it was otherwise available to the clerk prior to his mailing the notice. Id. Second, and more important to the court's decision, it concluded that the trial court's summary judgment order was correct even if the 2000 tax roll was available to the clerk before September 4, 2000, because "the clerk had no duty to look beyond the tax collector's statement in preparing the notice of tax sale." Id. Accordingly, because the clerk was entitled to "rely exclusively upon the information contained in the tax collector's statement," the court affirmed the trial court's decision. Id. at 870.
Judge Ervin dissented. In doing so, he reasoned that when sections 197.502(4)(a) and 197.522(1)(a) are read in pari materia, the clerk was required to mail the notice to the address as it appeared on the latest assessment roll. The latest roll, he explained, was required by law to have been completed as of July 1, 2000. Therefore, when the clerk mailed the notice on September 4 using the statement prepared in April, "the clerk simply did not comply with his statutory duty." Id. at 872 (Ervin, J. dissenting).
He continued that according to the majority opinion, even though Delta's correct mailing address would have been discovered had the tax collector's statement been properly updated, the clerk was required to look no further than the original statement, "even though he knew, or had reason to know, that the information might be outdated because it was not based on the latest assessment roll, which he was aware at the time of mailing, had superceded the 1999 roll." Id. Judge Ervin concluded:
I do not understand sections 197.502(4)(a) and 197.522(1)(a) to impose [an onerous] burden on the clerk. To me, a reasonable interpretation of them is that the clerk is simply directed to request the tax collector, once he is aware that the information contained in a statement may no longer be current because it was based on a tax roll since superceded, to supply him with a supplemental statement reflecting any updated material.
Id.
We agree with Judge Ervin, adopt the reasoning of his dissent, and certify conflict with Delta Property Management v. Profile Investments, Inc., 830 So.2d 867 (Fla. 1st DCA 2002). It is true that the statutes do not require the clerk to do anything more than rely upon the tax collector's statement in preparing the tax sale notices. However, there could come a point in time when the tax collector's statement no longer represents those who are entitled to notice. That is precisely what happened here. The clerk waited approximately five months before noticing and setting the tax deed sale; during the time lapse, the name on the tax assessment roll changed.
In its final summary judgment, the trial court recognized that section 197.522 does not state how soon after the filing of an application for tax deed the clerk must set the tax sale and mail notice thereof to the required persons. The court opined that "[i]t would, however, be absurd to view the absence of such an explicit provision to mean that the clerk was intended to have no time limit to act after the filing of an *1036 application for tax deed." The court further stated:
Section 197.522, Florida Statutes should be construed to required that the clerk set the tax sale and mail advance notice thereof within a reasonable time after the filing an application for tax deed so as to minimize the chance that persons who acquire an interest in the subject Property during the gap period are thereafter deprived notice of an impending tax sale merely because they are not identified on a stale certificate of interested persons. This construction is the only one that will promote the statute's purpose of providing due process to interested persons and that will maintain the statute's constitutionality. If, however, section 197.522, Florida Statutes is not so construed for some reason, it is unconstitutional as applied to Rhett.
As the trial court noted, Florida's statutory scheme for the assessment and enforcement of property taxes set forth in Chapter 197, Florida Statutes, has its underpinnings in Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), as well as its predecessor Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In Mennonite, the Supreme Court held that an Indiana statute violated the Fourteenth Amendment in failing to afford due process to a mortgagee with an interest in certain real property that was sold at a tax sale. The statute required that notice of an impending tax sale be mailed to the property owner, but only required posting and publishing of such notice to any other interested persons, including the mortgagee, even though the mortgagee's interest in the subject property was reasonably identifiable in the public record. The Supreme Court held that due process, at a minimum, required that the taxing authority mail the mortgagee advance notice of the tax sale so as to make a reasonable attempt to provide actual notice to a person with a reasonably identifiable interest in the subject property. In so holding, the Supreme court stated:
Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.
Mennonite, 462 U.S. at 800, 103 S.Ct. 2706, (emphasis in original).
In Dawson v. Saada, 608 So.2d 806 (Fla. 1992), our supreme court expressly recognized that Florida's scheme for enforcement of property taxes, as set forth in Chapter 197, is designed to afford due process to interested persons before real property is sold at a tax sale, as was addressed in Mennonite. Id. at 808, 103 S.Ct. 2706. Section 197.502(4), Florida Statutes enumerates certain categories of persons who have a "reasonably ascertainable" interest of record and are entitled to notice of a tax sale. These include "any person to whom the property was assessed on the tax roll for the year in which the property was last assessed." § 197.504(4)(f). Rhett, having been assessed the subject property's 2001 ad valorem taxes and paid them, fit within this category of interested persons and was thus entitled to be mailed advance notice of the tax sale.
We hold that when the clerk fails to schedule a tax sale and mail notice thereof within a reasonable time after the filing of an application for a tax deed, and a new tax roll assessment intervenes during such period of delay, the clerk must obtain an updated statement from the tax collector for notification purposes under *1037 section 197.522(1)(a), Florida Statutes. This requirement calls for no independent research and imposes minimal efforts on the clerk's part. More important, requiring a current tax collector's statement comports with the due process requirements of Chapter 197 to provide notice to interested persons before real property is sold for the collection of delinquent taxes.
For the reasons stated above, we affirm the final summary judgment quieting title to real property.
AFFIRMED.
WARNER and GROSS, JJ., concur.
NOTES
[1] In Broward County, the duties of the clerk of court are performed by the Broward County Administrator.
[2] Section 193.023(1), Florida Statutes, states that the property appraiser shall complete the assessment of the value of all property no later than July 1 of each year.