944 So.2d 289 (2006)
John VOSILLA, et al., Petitioners,
v.
Julio ROSADO, et al., Respondents.
No. SC05-1778.
Supreme Court of Florida.
November 9, 2006.
*290 Stephen P. Sapienza, Bunnell, FL, for Petitioners.
*291 Sherri K. DeWitt of the DeWitt Law Firm, P.A., Orlando, FL, for Respondents.
PARIENTE, J.
We have for review the Fifth District Court of Appeal's en banc decision in Rosado v. Vosilla, 909 So.2d 505 (Fla. 5th DCA 2005), which certified conflict with the Second District Court of Appeal's decision in Alwani v. Slocum, 540 So.2d 908 (Fla. 2d DCA 1989). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. The conflict issue is whether notice to a property owner that the property is scheduled for a tax deed sale, sent in compliance with section 197.522(1), Florida Statutes (2000), nonetheless violates due process of law when the taxing authority has received a change of address from the property owner but sends the tax sale notice to the owner's former address. The property owners in this case, who provided the taxing authority with a change of address, assert that the notice sent to their former address pursuant to section 197.522(1), was constitutionally inadequate to give them the opportunity to take action that could have prevented the sale. We agree that the notice was not reasonably calculated to apprise the owners of the tax deed sale, which is the due process test. For the reasons that follow, we approve Rosado and disapprove Alwani.

FACTS AND PROCEDURAL HISTORY
Julio and Nannette Rosado (hereinafter collectively referred to as the "Rosados") owned a residence that they lost as a result of unpaid ad valorem taxes. The property is located in Altamonte Springs, part of Seminole County. On May 27, 1998, nonpayment of ad valorem taxes for 1997 led the Seminole County tax collector to issue a tax certificate for the Rosados' property.[1] On September 25, 1998, the Rosados notified the tax collector that they had moved to a new residence located at 1614 Imperial Palm Drive in Apopka, Florida. The Rosados also informed the tax collector that they were the owners of the Altamonte Springs property and requested that "any and all correspondence from the [tax collector's] office, pertaining to said property, be sent to the following post office box: P.O. Box 176, ZELLWOOD, FL 32798." Further, the Rosados informed the tax collector that a legally incapacitated relative and his female caretaker were residing at their Altamonte Springs residence and that the caretaker did not speak English.
On February 21, 2000, the Rosados notified the clerk of court via certified mail that their mailing address had changed to the Apopka residence and that their Zellwood post office box could be used as a secondary address. The letter was directed to the attention of the property tax department of the court. The clerk of court acknowledged receipt of the Rosados' letter. Although the Rosados notified both the tax collector and the clerk of court of their change of address, the Rosados' address was not updated in the tax assessment roll.
*292 On April 3, 2000, the holder of the tax certificate applied for a tax deed to the Rosados' Altamonte Springs property pursuant to section 197.502, Florida Statutes (2000). A tax deed is a deed that is issued to the highest bidder on property sold at a public auction because of nonpayment of ad valorem taxes. Sections 197.522(1)(a) and 197.502(4)(a), Florida Statutes (2000), require the clerk of court to mail notice of the application for the tax deed to the address of the legal titleholder as listed on the latest tax assessment roll. Pursuant to these statutory provisions, the clerk of court mailed notice via certified mail to the Rosados at the address listed on the latest tax assessment roll. Because the Rosados' address had not been updated on the tax assessment roll, notification was mailed to the Altamonte Springs residence. The return receipt was signed by a Regina Carmona. The Rosados did not receive notice of either the application for the tax deed or the date of the proposed tax deed sale.
On December 18, 2000, the Altamonte Springs residence was sold at a tax deed sale to Edward J. Terry. The next day, Terry conveyed the property by quitclaim deed to John Vosilla, Emilio Cirelli, Kelly Scofield, and Steve Semmelman (hereinafter collectively referred to as "Vosilla"). Vosilla filed a complaint in the trial court to quiet title to the property. The Rosados asserted that because they had previously notified the tax collector and clerk of court of their change of address, the clerk's notice "was not `reasonably calculated under all the circumstances' to apprise them of the tax deed sale." Rosado, 909 So.2d at 506. The Rosados further asserted that the inadequate notice denied them due process. At trial, in addition to other evidence, the Rosados presented the testimony of the tax deed clerk for the clerk of court, who testified that the sheriff's office attempted to post notice of the tax deed sale at the Altamonte Springs property on November 16, 2000. The tax deed clerk further testified that prior to the tax deed sale, the sheriff's office provided written notice to the clerk of court that the Rosados no longer resided at the Altamonte Springs address. The tax deed clerk did not know whether the clerk's office employee who was working on the Rosados' file in November of 2000 was aware that the Rosados no longer resided at the Altamonte Springs address.
The trial court found that the failure of the Rosados to receive notice was "completely the fault of the taxing agencies." Nonetheless, the trial court concluded that the notice did not violate the Rosados' due process rights because the notice was sent in compliance with the statutory requirements. The trial court concluded it was bound by Alwani and Eurofund Forty-Six, Ltd. v. Terry, 755 So.2d 835 (Fla. 5th DCA 2000), both of which held that notice of a tax deed sale that complies with section 197.522(1) comports with due process even though the titleholder had sent the taxing authorities notice of a change of address.
On appeal, the Fifth District reversed. In its en banc opinion, the Fifth District noted that "[i]t is undisputed that the clerk complied with the statutory notice requirements," but questioned whether the notice provided was "`reasonably calculated, under all the circumstances,' to apprise the Rosados of the tax deed sale and afford them an opportunity to present their objections." Rosado, 909 So.2d at 511 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). The Fifth District answered this question in the negative and ruled that the notice provided did not satisfy due process because it "was not reasonably calculated to apprise the Rosados of the impending tax deed sale where the tax collector knew or should have known *293 that the address listed on the tax [assessment] roll was incorrect." Rosado, 909 So.2d at 511. The Fifth District receded from its decision in Eurofund to the extent it conflicted with its opinion and certified conflict with the Second District's decision in Alwani. See id. at 514.

ANALYSIS
The conflict issue is whether notice that complies with section 197.522(1) violates the requirements of due process where the taxing authority receives actual notice from the titleholder of a change of address but sends the notice of the tax deed sale to the former address. This issue does not require us to determine whether section 197.522(1) is facially constitutional. Rather, we are presented with an as-applied challenge to the constitutionality of the statute; that is, whether section 197.522(1) is unconstitutional as applied to the facts of this case.[2] We begin our analysis by setting forth the pertinent provisions of chapter 197, Florida Statutes (2000), and then discuss the constitutional due process requirements that must be satisfied before a person may be deprived of his or her property. Next, we explore case law addressing the effect of a titleholder's change of address on the notice requirements of section 197.522. Finally, we explain why the notice provided in this case did not comport with constitutional due process requirements.
I. Statutory Notice Requirements Applicable to a Tax Deed Sale
Chapter 197 governs tax collections, sales, and liens in this state. Section 197.522(1)(a) states that the clerk of the circuit court

shall notify, by certified mail with return receipt requested or by registered mail if the notice is to be sent outside the continental United States, the persons listed in the tax collector's statement pursuant to s. 197.502(4) that an application for a tax deed has been made. Such notice shall be mailed at least 20 days prior to the date of sale. If no address is listed in the tax collector's statement, then no notice shall be required.
(Emphasis supplied.) Section 197.502(4)(a) provides in pertinent part:
(4) The tax collector shall deliver to the clerk of the circuit court a statement that payment has been made for all outstanding certificates or, if the certificate is held by the county, that all appropriate fees have been deposited, and stating that the following persons are to be notified prior to the sale of the property:

(a) Any legal titleholder of record if the address of the owner appears on the record of conveyance of the lands to the owner. However, if the legal titleholder of record is the same as the person to whom the property was assessed on the tax roll for the year in which the property was last assessed, then the notice may only be mailed to the address of the legal titleholder as it appears on the latest assessment roll.

(Emphasis supplied.)
When read together, sections 197.502(4)(a) and 197.522(1)(a) "require the clerk to mail a notice of tax deed sale to the legal titleholder at the titleholder's address *294 as it appears on the latest assessment roll." Delta Prop. Mgmt., Inc. v. Profile Investments, Inc., 875 So.2d 443, 447 (Fla.2004). However, section 197.522(1)(d), Florida Statutes (2000), states that the "failure of anyone to receive notice as provided herein shall not affect the validity of the tax deed issued pursuant to the notice." Relying on language from this provision, we have explained that "`[t]he failure of anyone to receive notice' as provided in section 197.522(1) does not affect the validity of the tax deed as long as the clerk complies with the notice requirements of subsection (1)." Dawson v. Saada, 608 So.2d 806, 808 (Fla.1992) (alteration in original) (quoting § 197.522(1)(d), Fla. Stat. (1987)).
II. Constitutional Due Process Requirements
The Due Process Clause of the Fourteenth Amendment "require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and [an] opportunity for [a] hearing appropriate to the nature of the case." Mullane, 339 U.S. at 313, 70 S.Ct. 652.[3] The fundamental right to have a meaningful opportunity to be heard "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." Id. at 314, 70 S.Ct. 652. "A landowner whose property is to be sold for delinquent taxes undoubtedly has a vested ownership interest in the subject property and is therefore entitled to notice of a pending tax deed sale." Dawson, 608 So.2d at 808.
The United States Supreme Court has explained that to satisfy due process, any notice given must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314, 70 S.Ct. 652; see also Delta Prop. Mgmt., 875 So.2d at 447 (quoting Mullane); Dawson, 608 So.2d at 808 (quoting Mullane). Determining whether a particular method of notice is "reasonably calculated" to provide adequate notice requires "due regard for the practicalities and peculiarities of the case." Mullane, 339 U.S. at 314-15, 70 S.Ct. 652. "Subject to this limitation, the legislature has the authority to determine the extent and character of the notice which shall be given by the state before property is sold for nonpayment of taxes." Dawson, 608 So.2d at 808.
In Dawson, we addressed whether due process requires strict compliance with section 197.522(2) as well as section 197.522(1). Section 197.522(2) states that "[i]n addition to the notice provided in subsection (1), the sheriff of the county in which the legal titleholder resides shall, at least 20 days prior to the date of sale, notify the legal titleholder of record of the property on which the tax certificate is outstanding." In Dawson, the legal titleholders asserted that the clerk's failure to provide proper notice of the location of the tax deed sale and the sheriff's failure to serve additional notice pursuant to section 197.522(2) rendered the tax deed invalid for lack of due process of law. See 608 So.2d at 807. In rejecting the "contention that due process requires strict compliance with the notice provisions in both subsections of section 197.522," we explained that "subsection (1) specifies the mandatory duties of the clerk upon an application for a tax deed" and that "subsection (2), which *295 provides for additional notice by the sheriff, is directory only." Id. at 808. Therefore, a tax deed may not be set aside for failure to comply with section 197.522(2) where the clerk of court satisfies the requirements of section 197.522(1), id. at 810, which "mandat[es] notice reasonably calculated to apprise landowners of the pending deprivation of their property." Id. at 808.
In Dawson, we also considered whether sections 65.081(3) and 197.404, Florida Statutes (1987), which specified the defenses available to challenge either a tax deed or a tax deed sale, superseded section 197.522. See Dawson, 608 So.2d at 809.[4] Neither section 65.081(3) nor section 197.404 listed inadequate notice as an available defense. The Court ruled that these statutory provisions did not supersede the notice requirements set out in section 197.522, and therefore a legal titleholder could challenge the validity of a tax deed based on a lack of notice. See id. We reasoned that otherwise "a tax deed would be valid even without compliance with any of the statutory notice requirements," which would "contravene[] the `elementary and fundamental requirement of due process[,]' namely notice to the interested parties." Id. (second alteration in original) (quoting Mullane, 339 U.S. at 314, 70 S.Ct. 652).
III. Effect of Notice by Titleholder of Change of Address
Determining whether the notice sent in compliance with the statutory requirements comports with due process requires us to determine whether the notice was reasonably calculated to apprise the titleholders of the impending tax sale "under all the circumstances" and "with due regard for the practicalities and peculiarities of the case." Mullane, 339 U.S. at 314, 70 S.Ct. 652. Florida case law in this area reflects two significant scenarios: one in which the titleholder fails to provide a valid or updated mailing address, the other in which, as in this case, the titleholder informs the taxing authority of a new mailing address. We address each in turn.
A. Notice of Change of Address Not Provided by Titleholder
In Evans v. Ireland, 707 So.2d 1135 (Fla. 2d DCA 1998), the statutory notice of application for a tax deed was mailed to the titleholders' previous address. The titleholders "[did not inform] the Property Appraiser of the change of address." Id. at 1136. The titleholders were aware that the tax bills were being sent by the property appraiser to their previous address, which was also the address listed on the latest tax assessment roll. In addition, due to clerical error, the property appraiser began mailing the tax bills to the owners of an adjacent parcel, who forwarded the bills to one of the titleholders at his Florida address. Although aware of the error, the titleholders "took no action to change the mistake in the Property Appraiser's address records." Id. After correcting the error, and pursuant to section 197.522(1)(a), the clerk of court mailed notice of the tax deed sale to the titleholders' address as listed on the latest tax assessment roll. Relying on section 197.522(1)(d) and this Court's decision in Dawson, the Second District concluded that because notice was mailed in accordance with the requirements of section 197.522(1), "the fact that [the titleholders] did not receive the notice does not invalidate the tax deed." Id. at 1137.
In Kidder v. Cirelli, 821 So.2d 1106 (Fla. 5th DCA 2002), the "only address provided to the tax collector for the owner of [the] property was that of the property itself," *296 which was a vacant lot. Id. at 1107. As a result, the owner's address on the latest tax assessment roll, to which the statutory notice was mailed, was the address for the vacant lot. See id. at 1106-07. The statutory notice was returned undelivered. See id. at 1107. Although the owner conceded that the clerk of court complied with the statutory notice procedure, he asserted that "when the undeliverability of the mailed notice to the owner became known to the clerk, due process required that the clerk search for him." Id. The Fifth District disagreed and reasoned that an owner bears some responsibility for his correct address being on the tax assessment roll. See id. The Fifth District explained that "[n]o claim is made that [the owner] ever took any steps to provide a correct address to taxing authorities or discover why he was not receiving tax bills. A person in the position of [the owner] has no right to complain that the clerk did not look hard enough for him." Id.
The First District recently addressed this issue in Bozeman v. Higginbotham, 923 So.2d 535 (Fla. 1st DCA 2006). There, the clerk of court mailed the statutory notice "to the address Higginbotham had listed as his address [which] was [also] his last known address, as required by section 197.522(1)(a), Florida Statutes." Id. at 536. However, the notice was returned to the clerk of court, stamped "Return to Sender Attempted Not Known." Id. In rejecting the assertion that the tax deed was invalid, the First District ruled that as long as the clerk of court complies with the requirements of section 197.522(1)(a), the failure of an owner to receive actual notice does not affect the validity of the tax deed. See id. at 537.
The common element in these cases is that the titleholder took no action to provide the taxing authorities an updated or accurate address. Thus, even though the titleholders did not receive actual notice of the pending tax deed sale, compliance with the statutory requirements led the courts to conclude that no due process violation occurred. Unlike Evans, Kidder, and Bozeman, in which the titleholders did not provide a correct or updated mailing address, the certified conflict issue in this case raises a due process concern over the adequacy of section 197.522(1) when the titleholder has informed taxing authorities of a change of address prior to the mailing of the statutory notice and the taxing authorities have actual notice of the change of address. On this basis, Evans, Kidder, and Bozeman are distinguishable.[5]
B. Notice of a Change of Address Provided by Titleholder
In Alwani, the conflict case, the Second District rejected an as-applied challenge to the constitutionality of section 197.522. See 540 So.2d at 910. The titleholders asserted that they did not receive notices of the tax deed sales on their properties because the notices had been sent to their former address in Hong Kong rather than *297 to their correct address in the United Arab Emirates. See id. at 909. The titleholders further claimed that before the notices were mailed, they had notified both the tax collector and the clerk of court of their change of address, but that through error by these agencies the notices were not mailed to their correct address. See id. The Second District rejected the titleholders' assertion that the tax deeds were invalid for lack of notice.
The Second District held that where the clerk of court complies with the requirements of section 197.522(1)(a), notice of a tax deed sale comports with titleholders' due process rights even where the clerk, through error, fails to send the notice to the titleholders' correct mailing address. See id. at 909. In so holding, the Second District acknowledged the test articulated in Mullane and the subsequent decision of the United States Supreme Court in Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), for evaluating whether the notice given satisfies constitutional due process requirements. The Second District, however, distinguished both cases by concluding that neither Mullane nor Mennonite Board of Missions "concerned a lack of notice of the kind involved here to a taxpayer who knows that taxes are unpaid." Alwani, 540 So.2d at 910.
IV. The Vitality of Alwani in Light of Dawson and Delta Property Management
The Second District in Alwani viewed the due process requirements of United States Supreme Court precedent too narrowly. In addition to distinguishing Mullane and its progeny, the Second District based its decision in Alwani on three grounds: (1) titleholders have a legal obligation under section 197.332, Florida Statutes (1987), to pay ad valorem taxes before they become delinquent and are aware that there are consequences for their failure to do so; (2) lack of notice is not one of the grounds for challenging the validity of a tax deed under section 197.404, Florida Statutes (1987)[6]; and (3) a requirement that the clerk of court must look beyond the tax collector's statement to ascertain the titleholder's current address would create an "intolerable burden" on the clerk and would result in the clerk acting without legal authority. See 540 So.2d at 909-10. Through our opinions in Dawson and Delta Property Management, both of which were issued after Alwani was decided, we have rejected each of the three grounds for the Second District's decision in Alwani.
In Dawson, we explicitly rejected the assertion that the duty imposed by section 197.332 upon owners of real property in Florida relieves the state of its obligation to inform interested parties of a tax deed sale. See 608 So.2d at 810. Relying on the United States Supreme Court's decision in Mennonite Board of Missions, we explained that "[w]hile we agree that all taxpayers are under an obligation to know the status of their property, `knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is *298 pending.'" Id. (emphasis supplied) (quoting Mennonite Bd. of Missions, 462 U.S. at 800, 103 S.Ct. 2706). In addition, as discussed more fully above, we disagreed with the contention that section 197.404 superseded section 197.522 and thereby precluded a titleholder from challenging the validity of a tax deed based on lack of notice. See Dawson, 608 So.2d at 809. We determined in Dawson that although section 197.404 did not contain an exception for lack of notice, a titleholder may challenge the validity of a tax deed on this ground. See 608 So.2d at 809.
We recently rejected the remaining basis underlying Alwani when we concluded in Delta Property Management that under certain circumstances, the clerk of court has a duty to go beyond the tax collector's statement to ascertain the titleholder's correct address prior to mailing notice of a tax deed sale as required by section 197.522(1)(a). See 875 So.2d at 443-44, 448. In Delta Property Management, this Court addressed "whether, under chapter 197 of the Florida Statutes, the clerk of the circuit court must verify the legal titleholder's address prior to mailing the notice of the tax deed sale to that titleholder if the tax assessment roll has been or should have been updated after the tax collector provided the clerk with the tax collector's statement." 875 So.2d at 445. In that case, the clerk of court prepared the statutory notice of the tax deed sale more than three months after the clerk of court received the tax collector's statement, specifying the address of the titleholder as a party entitled to notice. See id. at 444. The titleholder allegedly notified the tax collector of its change of address five months before the tax collector delivered to the clerk of court the statement required by section 197.502(4)(a). See id. at 444 n. 4. The statement did not reflect the change of address. As a result, the tax collector's statement listed the titleholder's previous address as it was contained in the 1999 tax assessment roll. See id. at 444.
However, by the time the clerk of court prepared and mailed the notice to the titleholder, the latest tax assessment roll was, presumptively, the 2000 roll, not the 1999 version the tax collector relied upon in preparing the statement under section 197.502(4)(a). See id. at 447. Because the clerk of court relied solely on the address provided in the tax collector's statement without determining whether the 2000 roll was available, the titleholder did not receive notice of the tax deed sale. See id. at 445. We held that based on these circumstances, the
clerk of the circuit court, when mailing the notice of a tax deed sale to the titleholder of the affected property, must mail the notice to the address of the titleholder as listed in the latest tax assessment roll. If the tax assessment roll is updated after the clerk receives a statement from the tax collector but prior to mailing the notice to the titleholder, the clerk must look at the new assessment roll to see if the titleholder's address has changed and, if the clerk finds that the address has changed, the clerk must mail the notice to the new address listed in the latest assessment roll.
Id. at 443-44. We noted that to hold otherwise would deny a titleholder his or her property without due process of law. See id. at 447. We explained that "[w]hile the clerk should use the tax collector's statement when preparing the tax sale notices, circumstances may warrant some additional action by the clerk" because "`[t]here could come a point in time when the tax collector's statement no longer represents those who are entitled to notice.'" Id. at 448 (quoting Baron v. Rhett, 847 So.2d 1032, 1035 (Fla. 4th DCA 2003)).
*299 V. Notice "Reasonably Calculated" to Reach the Titleholder
In determining whether the notice given was reasonably calculated under all the circumstances in this case to apprise the titleholders of the tax deed sale, we reject the reasoning in Alwani, which rests on flawed premises. Instead, we apply the reasoning of Delta Property Management and the United States Supreme Court's recent decision in Jones v. Flowers, ___ U.S. ___, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006). As we explained in Delta Property Management, "[w]hile the clerk should use the tax collector's statement when preparing the tax sale notices, circumstances may warrant some additional action by the clerk." 875 So.2d at 448. Due process requires that the clerk look beyond the tax collector's statement when there is reason to believe that the statement no longer reflects those who are entitled to notice, see id., or as in this case and Alwani, the statement no longer reflects the titleholder's correct address.
In Jones, the United States Supreme Court held that when notice of a tax deed sale is mailed to the titleholder via certified mail and returned unclaimed, due process requires that the government take additional reasonable steps, if it is practicable to do so, to provide notice to the titleholder before selling his or her property. 126 S.Ct. at 1713. Following precedent recognizing the flexible nature of due process, the Supreme Court emphasized that
[w]e do not think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed. If the Commissioner prepared a stack of letters to mail to delinquent taxpayers, handed them to the postman, and then watched as the departing postman accidentally dropped the letters down a storm drain, one would certainly expect the Commissioner's office to prepare a new stack of letters and send them again. No one "desirous of actually informing" the owners would simply shrug his shoulders as the letters disappeared and say "I tried." Failing to follow up would be unreasonable, despite the fact that the letters were reasonably calculated to reach the intended recipients when delivered to the postman.
Id. at 1716. The Supreme Court further observed that "when a letter is returned by the post office, the sender will ordinarily attempt to resend it, if it is practicable to do so," noting that "[t]his is especially true when, as here, the subject of the letter concerns such an important and irreversible prospect as the loss of a house." Id.
The Supreme Court explained that in prior cases, it had required the state to "consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." Id. (citing Robinson v. Hanrahan, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972), and Covey v. Town of Somers, 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956)). In accord with this requirement, the Supreme Court determined that "[a]lthough the State may have made a reasonable calculation of how to reach Jones, it had good reason to suspect when the notice was returned that Jones was `no better off than if the notice had never been sent.'" Jones, 126 S.Ct. at 1716 (quoting Malone v. Robinson, 614 A.2d 33, 37 (D.C.1992)).
The reasoning of Jones is applicable here. Jones demonstrates that the steps undertaken by the state when notifying a titleholder of an impending tax deed sale of the titleholder's property *300 must be reasonably calculated to reach the titleholder under the totality of the circumstances. Such circumstances include unique information about an intended recipient that might require the taxing authority to make efforts beyond those required by the statutory scheme under ordinary circumstances.
VI. This Case
In this case, the Rosados twice advised the taxing authorities of their change of address. First, they sent a letter to the tax collector on September 25, 1998, specifically informing the tax collector that they were the owners of the Altamonte Springs property and advising that "any and all correspondence from [the tax collector's] office, pertaining to said property, be sent to the following post office box: P.O. Box 176, ZELLWOOD, FL 32798." Second, on February 21, 2000, more than four months before the statutory notice of the application for a tax deed was mailed, the Rosados sent a letter via certified mail to the clerk of court for Seminole County, advising the clerk that their new mailing address should be changed to the Apopka residence, and requesting that the clerk's records be updated upon receipt of the letter. The Rosados indicated that their "second mailing address will continue to be the previous address on record, P.O. Box 176 Zellwood, FL 32798." Evidently, the Rosados believed that their address had been updated in the tax collector's records as requested in the September 25 letter to the tax collector.
Both the tax collector and the clerk of court received the change of address letters sent to them by the Rosados. In addition, the return receipt for the statutory notice mailed by the clerk of court to the Altamonte Springs residence indicated that someone other than the Rosados signed for the notice. Further, the sheriff provided written notice to the clerk of court prior to the date of the tax deed sale that the Rosados no longer resided at the Altamonte Springs address. Thus, the clerk received "unique information about an intended recipient." Jones, 126 S.Ct. at 1716.
Significantly, the trial court found that the Rosados' failure to receive notice of the tax deed sale was "completely the fault of the taxing agencies." As did the Fifth District, we conclude that there is no basis on which to disturb this factual finding. The notice sent to the Rosados at their Altamonte Springs address, although in compliance with section 197.522(1), was not reasonably calculated under all the circumstances to apprise the Rosados of the tax deed sale. We also conclude that the facts of this case are such that the clerk of court knew or reasonably should have known that the notice was sent to the Rosados at an incorrect address.
We reject Vosilla's assertion that the Rosados' efforts to provide notification of their change of address were insufficient because they failed to notify the property appraiser. According to Vosilla, the Rosados should have provided notice of their change of address to the property appraiser because the property appraiser is the person responsible for updating the tax assessment roll. We agree with the Fifth District's rejection of this argument. See Rosado, 909 So.2d at 513. Although the property appraiser prepares the tax assessment roll for real property, see § 193.114(1)(a), Fla. Stat. (2000), there is no provision in chapter 193, Florida Statutes (2000), which governs tax assessments on all real and personal property in this state, specifying the taxing authority to which notice of a titleholder's change of address should be mailed. Nor is there any such provision in chapter 197, which governs tax collections, sales, and liens in *301 this state. In the absence of a statutory provision requiring that a change of address be directed to a specific taxing authority, we decline to disturb the factual findings of the trial court and the decision of the Fifth District solely because the Rosados failed to also notify the property appraiser of their change of address.
We conclude, as did the Fifth District, that the notice sent to the Rosados was not reasonably calculated to apprise them of the tax deed sale. Under the "practicalities and peculiarities" of this case, Mullane, 339 U.S. at 314, 70 S.Ct. 652, due process required that the clerk of court take additional reasonable steps to notify the Rosados of the tax deed sale prior to selling their property, such as checking to determine whether a change of address had been submitted. As in Jones, the fact that due process required the clerk of court to take additional reasonable steps to provide notice is measured against the backdrop of such a significant and irreversible prospect as the loss of a house.

CONCLUSION
For the reasons stated above, we approve the Fifth District's en banc decision in Rosado and disapprove the Second District's decision in Alwani.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Section 197.432(1), Florida Statutes (2000), which authorizes the issuance of tax certificates on property for which ad valorem taxes have not been paid, provides:

On the day and approximately at the time designated in the notice of the sale, the tax collector shall commence the sale of tax certificates on those lands on which taxes have not been paid, and he or she shall continue the sale from day to day until each certificate is sold to pay the taxes, interest, costs, and charges on the parcel described in the certificate. In case there are no bidders, the certificate shall be issued to the county. The tax collector shall offer all certificates on the lands as they are assessed.
[2] This Court has previously stated that "[s]ection 197.522(1) meets constitutional due process requirements by mandating notice reasonably calculated to apprise landowners of the pending deprivation of their property." Dawson v. Saada, 608 So.2d 806, 808 (Fla. 1992). Because this case involves an as-applied challenge to the constitutionality of section 197.522(1), our ruling will not disturb the determination in Dawson that the statute is constitutional on its face.
[3] The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." In this case, the Rosados claim only a violation of their federal due process rights.
[4] Section 197.404 was repealed in 1991. See ch. 91-295, § 11, at 2815, Laws of Fla.
[5] We do not consider the effect of the recent United States Supreme Court's decision in Jones v. Flowers, ___ U.S. ___, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), discussed infra at 19-21, on the Fifth District's decision in Kidder and the First District's decision in Bozeman that due process did not require the clerk to take any further action to notify the titleholder of the tax deed sale when the notice was returned undelivered. We note, however, that in Kidder, Judge Harris concluded in his dissent that the notice was not reasonably calculated to afford the titleholder actual notice. See Kidder, 821 So.2d at 1111 (Harris, J., dissenting). He observed that "[i]f the clerk becomes aware, as by the return of service . . ., and if the address is reasonably ascertainable, then I believe the constitution requires that the clerk proceed no further with the sale until the owner has been notified." Id.
[6] Section 197.404 provided as follows:

197.404 Sale of real or personal property for nonpayment of taxes; validity.A sale or conveyance of real or personal property for nonpayment of taxes shall not be held invalid except upon proof that:
(1) The property was not subject to taxation;
(2) The taxes had been paid before the sale of personal property; or
(3) The tax certificate on the real property had been redeemed before the execution and delivery of a deed based upon a certificate issued for nonpayment of taxes.